IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| DORA MAW,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN SNOW, Secretary of Treasury,<br><br>Defendant. | **ORDER**<br><br>Case No.: 1:03-CV-96 DB |

Defendant moves for summary judgment on Plaintiff's claim of discrimination under the Rehabilitation Act, 29 U.S.C. § 791(g). Having considered the parties' arguments and the relevant law, the Court now issues the following order.

*I.*

Dora Maw has worked for the Internal Revenue Service since 1996. Two years before beginning her work at the IRS, Ms. Maw fell and sustained injuries to her right thumb and shoulder which resulted in decreased grip strength and limitations in the range of motion in her right shoulder. Ms. Maw does not contend that she was disabled when she began working for the IRS, but she did use some special equipment in her work. In the summer and fall of 2000, Ms. Maw used an ergonomic chair, a wrist rest for the front of her computer keyboard, an electric stapler—all supplied by the IRS—and a pen grip she obtained from her physical therapist. Pl. Dep. at 24–25. In November or December of 2000, Ms. Maw orally requested a wrist rest mouse pad. *Id.* at 27, 29. She asked for one again in February 2001 and was asked to provide documentation from her doctor stating that she needed such a mouse pad. *Id.* at 29. Ms. Maw supplied a doctor's note requesting not only the wrist rest mouse pad, but also an ergonomic

roller mouse and a "total ergonomical work station." *Id.* at 31, 34. She received the wrist rest mouse pad about a month after her doctor's request, but did not immediately receive the roller ball mouse. *Id.* at 29.

On May 3, 2001, Ms. Maw contacted the EEO to complain that she had not received the ergonomic roller ball mouse and total ergonomic work station her doctor had requested in February. Pl. Dep. at 31. On May 4, 2001, Ms. Maw injured her right hand and on May 15 injured her left hand; both injuries were the result of repetitive hand use on the job. Ms. Maw appears to have received a roller ball mouse in May 2001. *Id.*; Pl. Opp. to Motion for Summary Judgment at 5. The mouse frequently froze up, though, and Ms. Maw would have to ask a supervisor to unplug the mouse and plug it in again to deal with the problem. Pl. Dep. at 37. Her doctor, Allisyn Okawa, recommended an ergonomic roller ball mouse September 6, 2001. *Id.* at 59. The ergonomic mouse was eventually provided, although it is not clear from the record when it arrived. Pl. Opp. to Motion for Summary Judgment at 5. Dr. Okawa filled out a form in October 2001 restricting Ms. Maw's work hours and duties; the IRS complied with these restrictions, assigning her to phone duties involving limited hand use. Pl. Dep. at 61–63. Although the position to which she was transferred was paid at a lower pay grade than her former position, Ms. Maw continued to be paid at her earlier, higher rate of pay. *Id.* at 61. In November 2001 a doctor from the federal occupational health service recommended that Ms. Maw's work involve only limited use of a computer mouse and the agency began to consider the purchase of a voice-activated computer system for Ms. Maw. *Id.* at 67–68. Difficulties in making such a system compatible with her employer's existing computers delayed Ms. Maw's training on the system until March 2002, and she did not begin using the system until April 2002. *Id.* at 109–110. During that time Ms. Maw continued to be assigned duties appropriate to her doctor's

2

restrictions. *Id.* at 68.

Ms. Maw requested a variety of forms of time off work between her injuries in May 2001 and filing this lawsuit. Ms. Maw requested and received time off shortly after her injuries in May 2001; for this time she was compensated through her employer's workers' compensation office at the rate of 60% of her wages at the time she was injured. Pl. Dep. at 36. In June 2001, Ms. Maw requested and received permission to take 480 hours' leave under the Family Medical Leave Act (FMLA) to care for her husband, who had suffered from kidney and heart failure since 1994, and who sometimes needed Ms Maw's help in attending to his personal and medical needs. *Id.* at 40–41. Ms. Maw testified that caring for her husband included preparing food for him, taking him his food and taking the dishes away when he was finished, making sure he was able to get around the house, and attending to any personal needs he might have. Pl. Dep. at 42. At the time of her deposition, Ms. Maw was unable to recall whether or not she had in fact taken off time to care for her husband in June or July 2001. *Id.* In August 2001, Ms. Maw requested additional time off under FMLA due to her own injuries. *Id.* at 58. This request was also approved. *Id.* Ms. Maw also requested "advanced sick leave" in August 2001, which was also approved. *Id.* at 92–93.

Ms. Maw brought suit in federal court, alleging discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 791.[1] While Ms. Maw's claims have altered with the passage of time and briefing, her claim is now that the IRS delayed providing equipment, causing her injuries and then exacerbating them. Ms. Maw asks for the difference between her compensation while taking time off and her ordinary rate of pay, lost overtime opportunities, and damages for

---

[1] Ms. Maw originally made a retaliation claim as well, but conceded in her reply memorandum that this claim could not survive a motion for summary judgment.

3

pain and suffering.

*II.*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court considers the factual record and all reasonable inferences that may be drawn from it in the light most favorable to the party opposing summary judgment. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

The Rehabilitation Act requires federal agencies to make reasonable accommodations for the employment of persons with disabilities. 29 U.S.C. § 791(g); 42 U.S.C. § 12112(b)(5)(A). A disability under the applicable provision of the Rehabilitation Act is "a physical or mental impairment that substantially limits one or more major life activities. 29 U.S.C. § 705(9)(B). The United States Supreme Court construes these requirements strictly: "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002).

The government argues that Ms. Maw has failed to present evidence that she is disabled for purposes of the Act. In support of this position the government correctly observes that Ms. Maw has remained able to attend to her personal hygiene and even requested time off after her injuries in May 2001 to attend to her husband's needs. Shortly after she sustained her injuries, Ms. Maw appears to have felt she was competent not only to care for herself, but to care for another as well. Ms. Maw was therefore not disabled in June 2001. Ms. Maw's complaints in her deposition that she is "not able to cook like [she] used to [and] not able to do hobbies," also

4

fall well short of the severity of limitation required by *Toyota*. Pl. Dep. at 144.

Even though Ms. Maw has not offered evidence supporting a claim of disability throughout the period of which she complains, her condition may have deteriorated sufficiently during some part of that period so that she became disabled. Among the activities *Toyota* sets apart as singularly significant are household chores, and Ms. Maw has supplied evidence suggesting that her health difficulties at some points prevented her from carrying out household chores. Dr. Okawa, Ms. Maw's physician, testified that on her December 21, 2001 visit, Ms. Maw was in sufficient pain that "she couldn't do a lot of daily activities like cleaning her house, cooking, and things like that." Okawa Dep. at 17. At her January 2002 visit, Ms. Maw reiterated these concerns regarding her difficulties "keeping up with cleaning and preparing meals." *Id.* at 31. For at least some part of the period of which she complains, Ms. Maw has supplied evidence that her impairments were sufficiently severe to meet the requirements of the *Toyota* test.

The test for disability in *Toyota* requires not only that an impairment be severe, but that it be permanent as well, and the government maintains that even if Ms. Maw's impairments reached the requisite level of severity, she has not established that they were permanent. But Ms. Maw need not establish the permanence of her injuries to defeat a motion for summary judgment; she need only raise a dispute as to the material fact of their permanence. Since neither side has marshaled evidence tending to show how Ms. Maw's condition evolved after her January 2002 visit to Dr. Okawa, the record is not well-adapted to resolving this issue on a motion for summary judgment.

The imperfections of the record regarding disability are not dispositive, because being disabled—or raising a genuine dispute as to disability—is not enough to prevail on a claim of discrimination under the Rehabilitation Act. The agency employing a person with a disability

satisfies its obligations under the Act if it makes reasonable efforts to accommodate that person's needs, and Ms. Maw has not raised a genuine issue of material fact with regard to the reasonableness of her employer's efforts to accommodate her. Ms. Maw claims the IRS failed to provide her with the devices she needed in a timely manner, causing and then exacerbating her injuries. But these claims are not supported by the evidence in the record. The delays of which Ms. Maw complains were either reasonably brief or took place while she was assigned to responsibilities adapted to her doctor's restrictions. Ms. Maw's wrist rest mouse pad, for example, arrived approximately a month after she completed the paperwork required for her request, a delay of relatively short duration. Ms. Maw received her first roller ball mouse approximately 3 months after her doctor requested it. While this delay is certainly longer, Ms. Maw's doctor's note February 2001 requested not only the wrist rest mouse pad, which she had previously requested, but a number of what appear to be new requests. It is not surprising that these new items took longer to provide than those of which the IRS had been made aware earlier. Moreover, as discussed above, Ms. Maw has not provided evidence that she was disabled during the period of this three month delay, and so the government was not required to accommodate what was not a disability. Ms. Maw most strenuously objects to the five month delay in obtaining voice-activated software, but this delay appears to be the least significant since the very first request for voice-activated software was made after she had been placed on duties requiring limited hand use in accordance with her doctor's recommendation.

Ms. Maw appears to believe her employer was required to respond to her evolving health condition and accompanying requests instantaneously and to make whatever accommodation she thought optimal. This is not the case. The law requires employers to make reasonable accommodations, not whatever accommodations a particular employee prefers. *See Selenke v.*

*Medical Imaging of Colorado*, 248 F.3d 1249, 1263 (10th Cir. 2001). The government provided Ms. Maw with requested equipment in a timely manner and made accommodations when her doctor requested them.

Finally, the government argues that Ms. Maw's action is precluded by the Federal Employee Compensation Act (FECA), which provides that the Act is the exclusive remedy for injured federal employees. 5 U.S.C. § 8116(c). FECA authorizes the Secretary of Labor to authorize compensation awards for the work-related injuries of federal employees and insulates such decisions from judicial review. 5 U.S.C. § 8128(b). To the extent that Ms. Maw's claims attempt to increase the amount of compensation she has been paid pursuant to FECA, this Court therefore lacks jurisdiction to entertain her claims. Ms. Maw argues that her Rehabilitation Act claim is not for her injuries but for discrimination based on her injuries. As the discussion above makes evident, Ms. Maw's claims of discrimination fail as a matter of law, so the Court need not reach the question whether FECA precludes a Rehabilitation Act claim of discrimination when both claims are based on the same injuries.

*III.*

For the reasons given above, the government's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**

DATED this 13th day of April, 2006.

_____
Dee Benson
United States District Judge